WAYNE GREENWALD, P.C.
*Attorneys for Respondent*
*Summa Capital Corp.,*
475 Park Avenue South - 26th Floor
New York, NY 10016
Wayne M. Greenwald

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re

       **BOAZ BAGBAG,**                    **Bankr Case No**
                               **08-12667 (MEW)**
                      **Debtor**
_____x

**BOAZ BAGBAG,**

                  **Petitioner,**          **State Court Index No,**
**-against-**                         **151048/2019**

**SUMMA CAPITAL CORP.,**

                  **Respondent.**
-----------------------------------------------------------------x

**NOTICE OF REMOVAL OF STATE COURT ACTION**
**TO UNITED STATES DISTRICT COURT, PURSUANT TO**
**28 U.S.C. § 1452 AND FED.R.BANKR.P. 9027(a)**
'
Summa Capital Corp. ("Summa") a creditor of the above-named Debtor (the

"Debtor"), by and through its attorneys, Wayne Greenwald, P.C., represents:

1.    Summa hereby gives notice and removes to the United States District Court,

       for the Southern District of New York, under 28 U.S.C. § 1452 and

       Fed.R.Bankr.P. 9027(a), the civil action styled *Boaz Bagbag, Petitioner -*

*against- Summa Capital Corp. Respondent* pending in the Supreme Court

of the State of New York, New York County, Index No.151048/2019 (the

"State Court Action").

2.      Summa anticipates this action being referred to United States Bankruptcy

Court for the Southern District of New York, where the Debtor's

bankruptcy case is pending. See, 28 U.S.C. § 157(a).

**Basis of Jurisdiction**

3.      On July 10, 2008, the Debtor, Boaz Bagbag, filed a voluntary petition for

relief under Chapter 7 of Title 11, United States Code ("Bankruptcy Code")

with the United States Bankruptcy Court, Southern District of New York,

case numbered  08-12667 (the "Case").

4.      Alan Nisselson was appointed chapter 7 trustee and qualified as such.

5.      On June 9,  2010, the Debtor entered into stipulation which rendered

Summa's claim against the Debtor, non-dischargeable, pursuant to 11

U.S.C. 523(a).  That stipulation was so-ordered by Bankruptcy Judge

Gonzalez.  See ECF # 103.

6.      On June 10, 2010, the Summa was granted a money judgment again the

Debtor for $1,212,062.40 (the "Judgment").

7.      That Judgment was entered by Bankruptcy Judge Arthur Gonzalez. See ECF

# 104.

8.    On February 4, 2013, the Case was closed.

9.    Through an order, dated June 6, 2018, the Case was reopened on the

Debtor's motion.  ECF # 158.

10.   The Case is open now.

11.   Summa is enforcing the Judgment.


**The Removed Proceeding**

12.   On February 5, 2018, the Debtor filed the State Court Action.

13.   The State Court action seeks to interfere with and prevent Summa from

enforcing its Judgment against the Debtor.

14.   The Debtor's Petition and Order to Show cause initiating the State Court

Action are annexed hereto as Exhibit "A."

15.   Summa's time to respond to the State Court Action is not until March 20,

2018.

16.   However, until then, the State Court's order to show cause improperly[1]

enjoins Summa from enforcing its Judgment.

---

[1] See, *BGW Assocs., Inc. v. Valley Broad*. Co., 532 F. Supp. 1115, 1116
(S.D.N.Y. 1982), citing *Donovan v. City of Dallas*, 377 U.S. 408, 412-13, 84 S.Ct.
1579, 1582, 12 L.Ed.2d 409 (1964) (Restraining federal court judgment's
enforcement as beyond state court's jurisdiction.)

17. The State Court Action relates to and concerns the Judgment entered by the Bankruptcy Court and enforcement proceedings initiated out of the Bankruptcy Court.

18. This Court and the Bankruptcy Court have jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334. See also, *In re Reedy,* 247 B.R. 742 (Bankr. E.D. TN 1999)(Bankruptcy Court has jurisdiction to enforce non-dischargeable money judgment).

19. The State Court Action is an action which may be removed pursuant to 28 U.S.C. § 1452.

20. The State Court Action lacks subject matter jurisdiction over the Judgment. See fn.1.

21. Upon removal of the State Court Action, the matter will be a core proceeding, under 28 U.S.C. §§ 157(b)(O).

22. This Notice of Removal is timely filed under Fed.R.Bankr.P. 9027(a)(2).

Dated: New York, NY
February 11, 2019

WAYNE GREENWALD, P.C.
*Attorneys for Respondent*
*Summa Capital Corp.,*
475 Park Avenue South - 26th Floor
New York, NY 10016

By: /s/ Wayne M. Greenwald Pres.
Wayne M. Greenwald

INDEX NO. 151048/2019
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 02/05/2019

At I.A.S. Part _23_ of the Supreme Court of
the State of New York, held in and for the
County of New York, at the Courthouse
thereof, _80_ Centre Street, New York, New
York, on the _5th_ day of ~~January,~~ _February_ 2019

PRESENT: HON. ___ **HON. W. FRANC PERRY, III** ___
**J.S.C.**

Justice of the Supreme Court

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| BOAZ BAGBAG, | Index No.: _151048/19_ |
| Petitioner, | |
| - against - | [Proposed] **ORDER TO SHOW CAUSE** |
| SUMMA CAPITAL CORP., | _MS# 001: PI_ |
| Respondent. | |

Upon reading and filing the Petition, ~~filed~~ _Verified_ the 29th day of January, 2019, and the affidavit
of Boaz Bagbag in support of his motion for a preliminary restraining order, an accounting, and
discovery, sworn to the 29th day of January, 2019:

Let the party or attorney in opposition show cause at I.A.S. Part _23_____, Room
_307_, of this Court, to be held at the Courthouse, _80_ Centre Street, New York, New York, on
the ___21st__ day of ___March_____, 20_19_, at _9:30_ o'clock in the
_AM_ ~~noon,~~ or as soon as the parties to this proceeding may be heard, why an order should
not be issued pursuant to CPLR §§ 3001, 5239, 5240, 6301, and 408, providing the following
relief:

1. enjoining respondent Summa Capital Corp. ("Summa") from making any further
   attempts to collect on or enforce its purported rights under the judgment in the
   amount of $1,212,062.40 against petitioner entered on June 10, 2010;

NYSCEF DOC. NO. 6

INDEX NO. 151048/2019

RECEIVED NYSCEF: 02/05/2019

2.   ordering an accounting of Summa's disposition of Pace Product Solutions, Inc.'s

assets and inventory, and the negotiation of its receivables; and

3.   ordering discovery concerning Summa's disposition of Pace Product Solutions,

Inc.'s assets and inventory, and the negotiation of its receivables.

AND IT IS HEREBY ORDERED that pending the hearing ~~and determination~~ of this

motion, Summa may not take any actions to collect on or enforce its purported rights under the

judgment in the amount of $1,212,062.40 against petitioner entered on June 10, 2010.

*Ordered that*

Sufficient *cause* appearing therefor, let ~~electronic~~ *personal* service of a copy of this Order, the

affidavit in support, and all other papers upon which this Order is granted, *including the Verified Petition,* be made upon

counsel for Summa on or before the ___11th___ day of ___February___ 2019 be deemed good and sufficient.

An affidavit or other proof of service shall be presented to this Court on the return date fixed

above.

ENTER

_____

J. S. C.    **HON. W. FRANC PERRY, III**
J.S.C.

**HON. W. FRANC PERRY, III**
J.S.C.

ORAL ARGUMENT
DIRECTED

**HON. W. FRANC PERRY, III**
J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| BOAZ BAGBAG, | Index No.: 151048/2019 |
| Petitioner, | |
| - against - | **VERIFIED PETITION** |
| SUMMA CAPITAL CORP., | |
| Respondent. | |

Petitioner Boaz Bagbag, through his undersigned attorneys, brings this verified petition against Respondent Summa Capital Corp. ("Summa"). This petition arises from Summa's improper attempts to collect on a supposed debt and judgment that has been fully repaid. As detailed herein, Mr. Bagbag respectfully seeks an order, pursuant to CPLR §§ 5239 and 5240, enjoining Summa from making any such collection efforts.

The claims asserted herein are based on the facts and information set forth below and upon information and belief, unless otherwise stated.

## INTRODUCTION

1. Petitioner Boaz Bagbag emigrated from Israel to the United States in 1992. After arriving in New York, he ventured into the auto parts business, ultimately building up a successful business operating in Yonkers, New York.

2. While the business was successfully operating, Respondent Summa advanced funds to the business, secured by the business's inventory and accounts receivable.

3. But in 2008, with the economy in recession, Mr. Bagbag suffered both a personal and business bankruptcy.

4. Ultimately, Summa took and sold the business's inventory as well as the accounts receivable, more than repaying the outstanding debt.

5.     America is indeed a shining city on a hill: our bankruptcy code allows a fresh start for everyone.   And for an immigrant, it is a remarkable opportunity to pick up the pieces and to try to *again* rebuild one's life.[1]

6.     But unbeknownst to Mr. Bagbag, Summa also secured a judgment in bankruptcy court against Mr. Bagbag individually, which derived from the false premise that Summa had not been fully repaid.

7.     Notably, Summa did *not* fully advise the bankruptcy court or the bankruptcy trustee of all of the amounts it was paid for Mr. Bagbag's business's assets.

8.     Meanwhile, Mr. Bagbag knew that Summa had been fully repaid, so he had no reason to know of the outstanding judgment until Summa took recent steps to collect on its judgment.

9.     Because the debt has been repaid, Mr. Bagbag respectfully asks that this Court enjoin Respondent from taking any action to execute on the judgment.

## THE PARTIES

10.     Petitioner Boaz Bagbag is a domiciliary of the State of New York and a resident of New York County, New York.

11.     Upon information and belief, Respondent Summa Capital Corp. is a New York State corporation with its principal place of business located in New York County.

---

[1] Indeed, America has improved upon the Biblical concept of שמיטה, as we forgive the debts of *both* our neighbor and the foreigner living amongst us.

Specifically, Deuteronomy provides only for the debt forgiveness of one's own and *not* the foreigner: "At the end of seven years you will make a release … to release the hand of every creditor from what he lent his friend; he shall not exact from his friend or his brother, because time of the release for the Lord has arrived.   From the foreigner you may exact; but what is yours with your brother, your hand shall release."

## JURISDICTION AND VENUE

12.     CPLR § 5239 provides that "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, *any interested person* may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt" (emphasis added).

13.     CPLR § 5240 provides that "[t]he court may at any time, on its own initiative or the motion of any interested person … make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

14.     Jurisdiction is proper pursuant to CPLR § 301 in that, among other things, Respondent is a citizen of New York County and has transacted business and committed the acts described herein within New York County, causing injury in this State and resulting in the claims herein.

15.     Venue is proper pursuant to CPLR § 503(a) as Respondent maintains its principal places of business in New York County, and a substantial portion of the activities from which this matter arose occurred in New York County.

16.     Further, pursuant to CPLR § 5239, a proceeding may be commenced "in a court or county specified in subdivision (a) of section 5221."   Venue is proper under CPLR § 5221(a)(4), which states:

> In any other case, if the judgment sought to be enforced was entered in any court of this state, a special proceeding authorized by this article shall be commenced, either in the supreme court or a county court, in a county in which the respondent resides or is regularly employed or has a place for the regular transaction of business in person or, if there is no such county, in any county in which he may be served or the county in which the judgment was entered.

## BACKGROUND

**A.    Mr. Bagbag's immigration to America**

17.    Boaz Bagbag was born and raised in Israel.

18.    Mr. Bagbag completed high school, but was not a strong student in languages. His English, at the time of the events described herein, was limited.

19.    Further, Mr. Bagbag had no formal college or university education.    (Mr. Bagbag studied in the Israeli army's programs during his army service.)

20.    After immigrating to the United States, Mr. Bagbag began to work in the auto parts industry.    Ultimately, prior to his bankruptcy, he was the proprietor of Pace Product Solutions, Inc. ("Pace"), which was a reseller and distributor of auto parts.

**B.    The factoring agreement**

21.    On or about January 10, 2006, Summa and Pace entered into a commercial financing arrangement by which Summa made working capital advances to Pace that were secured by Pace's inventory and accounts receivable.

22.    Under the terms of the agreement and its revisions, Summa would lend up to 80% of Pace's outstanding accounts receivable and up to 30% of Pace's inventory.

23.    Payments were timely made under the financing agreement until approximately March 2008.

**C.    The bankruptcy petitions**

24.    In March 2008, as the country was entering a recession, Pace had difficulty making payments to Summa.

25.    At that time, Summa had apparently lent $357,021.82 to Pace based on the inventory of Worldwide Flash (a Pace subsidiary), indicating that Flash had $1,190,072 in inventory.

26. The records also indicated that Pace itself had $1,459,508 in inventory.

27. With respect to accounts receivable, the records indicated that Pace had $461,254 in receivables and that Flash had $614,228 in receivables.

28. Overall, at the time, Pace and Flash combined had more than $2.5 million in inventory and more than $1 million in accounts receivable.

29. On or about March 20, 2008, Summa commenced suit against Pace in the Commercial Division of the Supreme Court of the State of New York, Westchester County. *See Summa Capital Corp. v. Pace Product Solutions, Inc., et al.*, No. 5998/2008.

30. Eventually, the Westchester court issued an order that essentially barred Pace from doing any further business until Summa was repaid.

31. Barred from doing business by the Westchester court, Pace needed to seek bankruptcy protection.

32. Mr. Bagbag and Pace hired Daniel M. Katzner, a young, relatively inexperienced lawyer with a small storefront office in the Bronx to assist in the bankruptcy.

33. The bankruptcy petition for Pace, prepared by Mr. Katzner and dated July 10, 2008, indicated that Summa had a claim for "$1,500,000 (Security interest in inventory valued at $1,000,000)".

34. This $1 million inventory figure was significantly incorrect.

35. On July 24, 2008, the bankruptcy court issued an order barring Pace and its officers, directors, and employees, including Mr. Bagbag, from entering the business's premises.

36. In September 2008, in scheduling Pace's assets, Mr. Katzner reported $315,906 in accounts receivable and $1,609,024 in inventory.

37. These figures were also significantly incorrect, under-reporting Pace's assets by some $1.5 million.

38.     The schedule was signed (under penalty of perjury) as "/s/ Boaz Bagbag".

39.     Mr. Bagbag did *not* sign this schedule.   He did not sign documents using a "/s/" electronic signature.

40.     Further, had Mr. Bagbag (whose English was still quite limited) known that the schedule reported barely $2 million in assets, instead of approximately $3.5 million, he definitely would not have signed or authorized the filing of the schedule.

**D.    The sales of the inventories and collection of accounts receivable**

41.     On July 31, 2008, the bankruptcy trustee entered into a stipulation with Summa allowing Summa to take possession of all of Pace's inventory and collect on the accounts receivable.

42.     For the three days after Summa obtained the keys to the premises, Mr. Bagbag parked out front of the Yonkers business and observed Summa unloading Pace inventory.

43.     On information and belief, Summa continued to sell Pace's inventory until October 10, 2008.

44.     Finally, in mid-October 2008, more than two and a half months after Summa took control of the inventory, a public auction was supposedly held.

45.     Neither Pace nor petitioner ever received notice of this auction.

46.     On information and belief, the auction was improper and MEP Auto, Inc. ("MEP Auto") was un-naturally the *only* bidder.

47. The auctioneer reports having sold all of Pace's physical assets (which were worth approximately $2,649,580) to MEP Auto on October 16, 2008, for $525,000:

| 1 LOT | Bulk bid for all assets consisting of inventory pallet racking, metal shelving, ladders, carts Clark Forklift, office furniture, office equipment, 1992 Chevrolet Suburban AstroEXT VIN 1GNDM19Z4NB217325 and 1994 Dodge/Chrysler Utility RAM 350 VIN 2B5WB35Y8RK134215 | 525,000.00 | $ | 525,000.00 |
|---|---|---|---|---|
| | | - | | - |
| | | - | | - |
| | | - | | - |
| | | - | | - |
| | | - | | - |

48. The above description of the assets sold at the auction ("Bulk bid for all assets consisting of inventory pallet racking, metal shelving, ladders, carts Clark Forklift, office furniture, office equipment, 1992 Chevrolet Suburban AstroEXT VIN 1GNDM19Z4NB217325 and 1994 Dodge/Chrysler Utility RAM 350 VIN 2B5WB35Y8RK134215") does not specifically reference Pace's inventory, which represented the vast majority of Pace's assets.

49. Inventory pallet racking – which is referenced in the description – is racking that was used to hold or store the inventory, and is not the same as car parts inventory.

50. Subtracting supposed fees and expenses, the auctioneer claimed only $411,848 in net proceeds from the auction, a mere 16% of the value of the inventory.

51. On information and belief, Summa received additional payments for Pace's inventory from MEP Auto, which were not reported to the bankruptcy court.

52. Documents from the State Tax Department indicate that, at a minimum, Summa did not advise the bankruptcy court and bankruptcy trustee of the full amounts it received from MEP Auto.

53. On information and belief, MEP Auto paid at least $750,000 for Pace's assets.

54. Yet Summa only reported to the bankruptcy court and the bankruptcy trustee the $525,000 amount from the sole-bid auction, as discussed above.

55.     Thus, it appears that the auctioneer, the buyer, and Summa managed to hold a single-bidder "auction" at which MEP Auto paid $525,000 (which it reported to the bankruptcy court) *and* Summa separately accepted additional monies from MEP Auto (which it did *not* report).

56.     Finally, with respect to the more than $1 million in accounts receivable, Summa ultimately claimed to the bankruptcy court that (as of January 29, 2009) it had only collected $65,969.

57.     Mr. Bagbag, however, was entirely unaware of the low figures reported by Summa.   Given that he understood that Summa had a claim for $1.5 million, and given that Pace had millions in inventory and accounts receivable, Mr. Bagbag was confident that Pace had been more than made whole.   Indeed, Mr. Bagbag understood that Summa had *profited* from his bankruptcy, taking more than it was owed.

## E.     No accountings were performed.

58.     The July 31, 2008 stipulation required Summa to "provide the Trustee with (a) a written accounting of its sale and/or other disposition of the Collateral [inventory and accounts receivable] not later than sixty (60) days after the completion of such sale or other disposition and (b) quarterly reports of all of Summa's collection of the Debtor's accounts and accounts receivable."

59.     On information and belief, no such accountings were ever provided or filed.

## F.     Because the auction was not properly conducted, the NY UCC bars Summa from seeking any further recovery from Pace or Mr. Bagbag.

60.     NY UCC § 9-610(b) provides that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."

61.     Accordingly, because Summa's auction was not conducted in a commercially reasonable manner, with no notice to the debtor, no accounting to the debtor or the Bankruptcy Trustee, and at an unreasonably low reported sale price for the assets, there is a rebuttable presumption that Summa was not entitled to recover for any deficiency from Pace or Mr. Bagbag, based on the authority of NY UCC § 9-610 and NY UCC § 9-626(a)(3).

**G.      The "stipulated" judgment**

62.     Almost two years after Summa took possession of Pace, and more than a year and a half after the (supposed) auction, on June 4, 2010, Mr. Katzner (Mr. Bagbag's lawyer) and Summa entered into a stipulation.

63.     Under the terms of the stipulation, Mr. Katzner stated that "[t]he Debtor hereby agrees to except from discharge and dischargeability Claim No. 13, filed on June 17, 2009".

64.     Mr. Katzner further stipulated to the entry "of a judgment in favor of Summa in the amount of $1,212,062.40".

65.     According to Mr. Katzner's stipulation, Summa's claim was for $1,697,183.91 and only $485,121.54 supposedly having been collected, leaving $1,212,062.40 ostensibly uncollected.

66.     Mr. Katzner apparently decided that the debt was not dischargeable, although discharging debts and providing a fresh start is precisely the purpose of America's bankruptcy code.

67.     The stipulation to the judgment was signed by Mr. Katzner.   It was *not* signed by Mr. Bagbag.   Because Mr. Bagbag was unaware of the Stipulation or its terms, he did not and could not raise any objection at the time.

68.     On June 8, 2010, the bankruptcy court signed a brief order granting judgment, based on the stipulation, in favor of Summa against Mr. Bagbag.

69.     Mr. Bagbag *never* authorized an agreement to enter a judgment against him and in favor of Summa for $1.2 million.   Not only did he not authorize the judgment, he *would not* have done so, as he knew that Summa had been fully repaid through the sale of Pace's inventory and the collection of the accounts receivable.

70.     Mr. Bagbag never engaged in any conduct that suggested Mr. Katzner had authority to bind him to the Stipulation.   Mr. Bagbag did not participate in any discussions with Summa concerning any proposed settlement, or appear at any court proceedings where such a settlement was discussed.

71.     The stipulation was docketed on June 9, 2010 and the Judgment was docketed on June 10, 2010.

72.     The certificate of service indicates that the Judgment was sent to an address at which Mr. Bagbag no longer resided.

**H.      Summa re-appeared in 2018**

73.     The order of final decree was entered in October 2011 in the Pace (business) bankruptcy case and the order of discharge was entered in Mr. Bagbag's personal bankruptcy in February 2012.

74.     Mr. Bagbag justifiably understood that the nightmare of bankruptcy had concluded and that he could resume his life with the fresh start offered by the bankruptcy code.

75.     Almost seven years later, during the recent summer of 2018, Mr. Bagbag received some kind of notice from an attorney.   It indicated that Summa was attempting to collect on some kind of debt.

76.     Mr. Bagbag was quite surprised, as he knew that he did not owe any debt to Summa.

77.    Mr. Bagbag retained counsel to look into the matter and was soon shocked to learn that his original bankruptcy counsel had stipulated to the entry of a judgment in favor of Summa.   He never knew of or heard of the 2010 stipulation and Judgment until then.

78.    As noted above, Mr. Bagbag *never* authorized an agreement to enter a judgment against him and in favor of Summa for $1.2 million.   Indeed, he *would not* have done so, as he knew that Summa had been fully repaid through the sale of Pace's inventory and the collection of the accounts receivable.

79.    Yet nobody has been willing to provide any answers.

80.    When contacted, Summa was unwilling to provide records to substantiate its claim.

81.    The trustee, to whom Summa was required to provide a written accounting, claims that its records are "in storage" – strange, given that 2008 was certainly a hard drive and server era.

82.    And Mr. Katzner doesn't quite know what happened or how he managed to stipulate to a $1.2 million judgment.

83.    By way of this CPLR § 5239 proceeding, Mr. Bagbag can finally get answers and resolve this dispute.

## **FIRST CAUSE OF ACTION**
### **(Declaratory Judgment and Determination of Adverse Claims)**

84.    Petitioner repeats and re-alleges all previous paragraphs with the same force and effect as if the same were set forth more fully at length herein.

85.    Mr. Bagbag is an "interested person" who has a dispute with Summa with respect to the rights in his own "property or debt."   CPLR § 5239.

86.     Further, because Summa was fully repaid, Summa has no rights in Mr. Bagbag's property.

87.     Accordingly, a justiciable controversy exists between the Parties with respect to Summa's rights in Mr. Bagbag's property.

88.     CPLR § 5239 provides that "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, *any interested person* may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt" (emphasis added).

89.     CPLR § 5240 provides that "[t]he court may at any time, on its own initiative or the motion of any interested person … make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

### SECOND CAUSE OF ACTION
### (Demand for an Accounting)

90.     Petitioner repeats and re-alleges all previous paragraphs with the same force and effect as if the same were set forth more fully at length herein.

91.     A demand for an accounting is not limited to a demand based on the existence of a confidential or fiduciary relationship.

92.     Here, Summa was required by court order to account for the inventory and receivables that it took from Pace.   But Summa did not provide any such accountings.

93.     Petitioner is entitled to a full and complete accounting of the sales of Pace's inventory and the collections on Pace's receivables.

### PRAYER FOR RELIEF

94.     For all of the foregoing reasons, and for the reasons set forth in the accompanying Memorandum of Law, Petitioner respectfully requests that the Court issue an order pursuant to

CPLR §§ 3001, 5239, and 5240 declaring that Mr. Katzner had no authority to enter into the Stipulation on behalf of Mr. Bagbag, enjoining Summa from making any further attempts to collect on or enforce its purported rights under the Judgment, ordering an accounting of Summa's disposition of Pace's inventory and negotiation of its receivables, and granting such other and further relief as may be just and proper.

95. No previous application has been made to this or any other Court for the relief sought herein.

WHEREFORE, Petitioner respectfully seeks an order:

(a) declaring that Mr. Katzner had no authority to enter into the Stipulation on behalf of Mr. Bagbag and enjoining Summa from making any further attempts to collect on or enforce its purported rights under the Judgment;

(b) requiring an accounting of Summa's disposition of Pace's inventory and negotiation of its receivables,

(c) directing discovery, pursuant to CPLR § 408, as appropriate in connection with the facts described herein; and

(d) granting such other and further relief that the Court deems just and appropriate.

Dated: New York, NY
January **29**, 2019

POLLOCK COHEN LLP

By: _____

Adam Pollock
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361
Adam@PollockCohen.com
*Attorneys for Petitioner*

## VERIFICATION

STATE OF NEW YORK )
                              ) ss.:
COUNTY OF NEW YORK )

BOAZ BAGBAG, being duly sworn, deposes and says:

I am individually the named Petitioner.    I have read the foregoing Petition and know the

contents thereof; the same is true to my knowledge, except as to the matters therein stated to be

alleged on information and belief and as to those matters, I believe them to be true.

BOAZ BAGBAG

Sworn to before me this
21 day of January 2019

Notary Public

Caun expn 7/20/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

BOAZ BAGBAG,

       Petitioner,

         - against -

SUMMA CAPITAL CORP.,

       Respondent.

---

Index No.:  151048/2019

Mot. Seq. [1]

**AFFIDAVIT IN SUPPORT**

STATE OF NEW YORK      )
                    ) ss.:
COUNTY OF NEW YORK  )

    Boaz Bagbag, being duly sworn, hereby deposes and says:

    1.     I am a resident of New York County, am greater than 18 years of age, and have personal knowledge of all of the facts set out below.

    2.     I am the petitioner in the above-captioned action and am fully familiar with the facts set forth and circumstances described herein.   I submit this affidavit in support of petitioner's order to show cause application.

    3.     This action arises from the improper attempts by Respondent Summa Capital Corp. ("Summa") to collect on a supposed debt and judgment that has been already been fully repaid.

    4.     I bring this application for a preliminary injunction and temporary restraining order to stop Summa's ongoing threats and harassment, and to preserve the status quo pending resolution of my petition pursuant to CPLR §§ 5239 and 5240.

15.     I retained counsel to look into the matter and was soon shocked to learn that my original bankruptcy counsel had stipulated to the entry of a $1.2 judgment in favor of Summa in 2010.   This was the first time I learned of the 2010 stipulation and judgment.

16.     I never authorized an agreement to enter a judgment against me and in favor of Summa for $1.2 million.   Indeed, I would not have done so, because I knew that Summa had been fully repaid through the sale of Pace's inventory and the collection of the accounts receivable.

17.     Moreover, it would have made no sense to stipulate that Summa was owed 100 cents on every dollar it (falsely) claimed was outstanding.   There would be no point to seek bankruptcy protection only to ultimately stipulate to the (alleged) debts.

18.     Today, Summa has been unwilling to provide any records to substantiate its claim.

19.     As I investigated these matters, we have found evidence (for example, letters from the New York State Department of Taxation and Finance demanding payment of applicable sales tax) demonstrating that Summa received payments from the buyer of Pace's inventory which Summa fraudulently did not report to the bankruptcy trustee or the bankruptcy court.

20.     In addition, two different sources with personal knowledge have advised that Summa was paid either $750,000 or $1.1 million for Pace's assets, demonstrating that Summa falsely reported to the bankruptcy court that it sold Pace's inventory for a mere $525,000.

21.     Last week, Summa advised that it is "initiating enforcement" of its improperly obtained judgment, threatening that I should "anticipate changes to [my] lifestyle" if I do not immediately agree to pay Summa money to which it is not entitled.

22.    Summa's collection efforts are improperly harassing and threaten to disrupt my current business and cause serious damage to his business interests and reputation that cannot be fully remediated by a damages award.

23.    Summa has also served a lawyer who has worked for me, James Shenwick, Esq., with an information subpoena, allegedly in connection with its collection efforts.

WHEREFORE, Petitioner respectfully requests that the Court grant his application in all respects, and grant him such other and further relief as the Court deems just and appropriate.

_____

BOAZ BAGBAG

Sworn to before me this
___ day of January 2019

_____
Notary Public

Commn expires 4/21/2020

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

BOAZ BAGBAG,

    Petitioner,

    - against -

SUMMA CAPITAL CORP.,

    Respondent.

Index No. 151048/2019

**Motion Seq. No. [1]**

**Memorandum of Law in Support of Motion for
Preliminary Restraining Order, Accounting, and Discovery**

POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361
*Attorneys for Petitioner*

# **Table of Contents**

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 3

      A.    Respondent Summa caused Mr. Bagbag's bankruptcy. ........................... 3

      B.    The bankruptcy petition inaccurately represented Pace's assets. .............. 4

      C.    Summa took possession of Pace's assets. ................................................... 5

      D.    No accountings were performed. ................................................................ 6

      E.    Mr. Bagbag's lawyer "stipulated" to a judgment without authority. .......... 6

      F.    Summa suddenly re-appeared in 2018. ...................................................... 7

ARGUMENT ......................................................................................................................... 8

  I.    Petitioner is likely to succeed on the merits. ........................................................ 9

      A.    Mr. Katzner had no authority to enter into the stipulation on
           behalf of Mr. Bagbag. ............................................................................ 11

      B.    Summa has already collected any amounts it was owed by
           Mr. Bagbag. .......................................................................................... 13

      C.    A permanent injunction is necessary and appropriate. ............................ 14

  II.    The Court should order an accounting. ............................................................... 15

  III.    The Court should order discovery concerning Pace's inventory and accounts
      receivable and the amounts summa collected from Pace. .................................... 16

CONCLUSION ................................................................................................................... 17

## Table of Authorities

**CASES**

*Am. Pride Constr. Inc. v. Russ Freeman Excavating Inc.,*
   182 A.D.2d 940 (3d Dep't 1992)..................................................................... 10

*Andersen v. Roberts,*
   No. 1412-17, 2018 WL 6055990 (Sup. Ct., N.Y. Cty., May 10, 2018)................. 11

*Cruz v. T.D. Bank,*
   N.A., 22 N.Y.3d 61 (2013) ........................................................................ 10, 11

*Danae Art Int'l Inc. v. Stallone,*
   163 A.D.2d 81 (1st Dep't 1990) ...................................................................... 8

*Davis-Delaney-Arrow, Inc. v. Gerson-Ogden, Inc.,*
   427 N.Y.S.2d 559 (Sup. Ct., N.Y. Cty. 1980)................................................. 15

*Elow v. Svenningsen,*
   58 A.D.3d 674 (2d Dep't 2009)....................................................................... 14

*Gramercy Co. v. Benenson,*
   223 A.D.2d 497 (1st Dep't 1996) ..................................................................... 9

*Guardian Loan Co. v. Early,*
   47 N.Y.2d 515 (1979)..................................................................................... 15

*Hallock v State of New York,*
   64 N.Y.2d 224 (1984) .................................................................................... 12

*In re Kollel Mateh Efraim, LLC,*
   334 B.R. 554 (Bankr. S.D.N.Y. 2005)............................................................ 12

*Nobu Next Door, LLC v. Fine Arts Hous., Inc.,*
   4 N.Y.3d 839 (2005)......................................................................................... 8

*Palazzo v. Palazzo,*
   121 A.D.2d 261 (2d Dep't 1986) ..................................................................... 16

*Slotnick v. Chem. Bank,*
   247 A.D.2d 294, 294 (1st Dep't 1998) ............................................................ 16

*Soressi v. SWF, L.P.,*
   81 A.D.3d 1143 (3d Dep't 2011) ..................................................................... 11

*Stevens v. St. Joseph's Hosp.,*
   52 A.D.2d 722 (4th Dep't 1976) ..................................................................... 16

*Viacom Outdoor Grp., Inc. v. McClair,*
    62 A.D.3d 864 (2d Dep't 2009) .................................................................................. 15

*Wandschneider v. Bekeny,*
    75 Misc. 2d 32 (Sup. Ct., Westchester Cty. 1973) .................................................. 15

*Winston Capital, LLC v. Abadiam,*
    70 A.D.3d 414 (1st Dep't 2010) ................................................................................ 16

*Yellow Creek Hunting Club, Inc. v. Todd Supply, Inc.,*
    145 A.D.2d 679 (3d Dep't 1988) ............................................................................... 15

*Zheng v. City of New York,*
    92 A.D.3d 412 (1st Dep't 2012) ............................................................................ 1, 8

**STATUTES**

CPLR § 3001 ................................................................................................................ 11, 17

CPLR § 408 ................................................................................................................... 16, 17

CPLR § 5239 ......................................................................................................... 2, 9, 10, 17

CPLR § 5240 ........................................................................................................... 14, 15, 17

CPLR § 6301 ..................................................................................................................... 8, 9

NY UCC § 9-610(b) ............................................................................................................. 13

NY UCC § 9-611 ................................................................................................................. 13

NY UCC § 9-626 ................................................................................................................. 13

Petitioner Boaz Bagbag, through his undersigned attorneys, submits this memorandum of law in support of his motion for a preliminary injunction and temporary restraining order against Respondent Summa Capital Corp. ("Summa"), an accounting, and discovery.

## PRELIMINARY STATEMENT

"The purpose of a preliminary injunction is to maintain the status quo while an action is pending." *Zheng v. City of New York*, 92 A.D.3d 412, 413 (1st Dep't 2012). Such an order is appropriate here, to prevent Summa from attempting to enforce an illegitimate judgment that it has been sitting on for nearly ten years, concerning a debt for which Summa has already been paid.

Mr. Bagbag initiated this special proceeding to stop Summa's attempts to get paid twice for the same obligations. As detailed below, Summa lent funds to Mr. Bagbag's former business Pace Product Solutions, Inc. ("Pace") between 2006 and 2008, secured by Pace's inventory and accounts receivable. When Pace struggled to make payments during the 2008 recession, Summa went to court for an order shutting down the business and allowing Summa to seize Pace's assets, then worth approximately $2.6 million. Summa's action forced Mr. Bagbag and Pace into bankruptcy. At the time, Pace's debt to Summa amounted to approximately $1.5 million, so the $2.6 million in inventory and accounts receivable that Summa seized from Pace were more than sufficient to satisfy Pace's obligations to Summa. Mr. Bagbag was therefore shocked when Summa suddenly re-appeared ten years later seeking to enforce an alleged $1.2 million judgment (the "Judgment") against Mr. Bagbag.

Upon investigation, Mr. Bagbag learned that the Judgment is based on an unauthorized settlement between Mr. Bagbag's bankruptcy counsel and Summa. In a June 4, 2010 stipulation (the "Stipulation"), signed by Mr. Bagbag's bankruptcy counsel, the parties stipulated that Summa had a claim that was non-dischargeable in bankruptcy and purported to agree to the

entry "of a judgment in favor of Summa in the amount of $1,212,062.40."   Mr. Bagbag never

authorized this Stipulation, or any settlement with Summa.

Nor would he have agreed that *any* further amounts were owed to Summa.   On the

contrary, Summa had collected $2.6 million worth of assets to satisfy a $1.5 million obligation,

and if any money was owed at that time it was owed *by* Summa to Pace and Mr. Bagbag.

Moreover, it would have made no sense to stipulate that Summa was owed 100 cents on every

dollar it (falsely) claimed was outstanding.   There would be no point to seek bankruptcy

protection only to ultimately stipulate to the (alleged) debts.

CPLR § 5239 allows Mr. Bagbag to commence a special proceeding against his alleged

judgment creditor Summa, in order to expeditiously resolve the parties' dispute over whether

Summa has rights in any property or debt of Mr. Bagbag under the Judgment.   Mr. Bagbag's

petition seeks the following relief.   First, Mr. Bagbag seeks a declaration that his bankruptcy

counsel had no authority to bind him to the Stipulation because Mr. Bagbag never authorized his

bankruptcy counsel to settle any claims with Summa, nor did counsel have apparent authority to

do so.   Second, Mr. Bagbag seeks an injunction barring Summa from making any further

attempts to collect amounts that have already been paid in full.   Finally, Mr. Bagbag seeks an

accounting and discovery concerning Summa's sale and/or other disposition of Pace's inventory

and accounts receivable, and Summa's collection of Pace's accounts receivable.   This

information will establish that Summa has already been more than fully compensated and has no

further rights to property belonging to Mr. Bagbag.

In the current application, Mr. Bagbag seeks a preliminary injunction and temporary

restraining order barring Summa's ongoing attempts to intimidate Mr. Bagbag into paying its

improperly obtained judgment, as well as an accounting and discovery.   This application is

necessary because of Summa's threats and efforts to collect a debt that has already been fully

satisfied.    Summa has waited eight years to take any action with respect to its purported

judgment and will not be harmed by waiting a short additional time while the court considers

whether Summa has any right to collect amounts beyond what it has already taken from

Mr. Bagbag and Pace.

## FACTUAL BACKGROUND

The below facts are attested to in the sworn petition and affidavit of Boaz Bagbag, filed

together with this memorandum of law.[1]

### A.  Respondent Summa caused Mr. Bagbag's bankruptcy.

Petitioner Boaz Bagbag was the proprietor of Pace Product Solutions, Inc., a reseller and

distributor of automobile parts.    Pet. ¶ 20.    In January 2006, Pace entered into a commercial

financing arrangement with Respondent Summa – a private equity fund – pursuant to which

Summa made working capital advances to Pace, secured by Pace's inventory and accounts

receivable.    Id. ¶ 21.    Under the terms of the agreement and its revisions, Summa would lend

up to 80% of Pace's outstanding accounts receivable and up to 30% of Pace's inventory.    Id.

¶ 22.    Payments were timely made under the financing agreement until approximately March

2008.    Id. ¶ 23.

In March 2008, however, as the country was entering a recession, Pace had difficulty

making payments to Summa.    Id. ¶ 24.    At that time, Summa had apparently lent $357,021.82

to Pace based on the inventory of Worldwide Flash ("Flash," a Pace subsidiary), indicating that

Flash had $1,190,072 in inventory.    Id. ¶ 25.    The records also indicated that Pace itself had

$1,459,508 in inventory.    Id. ¶ 26.    Together with its subsidiary Flash, Pace therefore had

---

[1] Citations to "Pet. __" refer to the indicated paragraphs in the accompanying petition of Boaz
Bagbag, and citations to "Bagbag ¶ __" refer to the indicated paragraphs in the accompanying
affidavit of Boaz Bagbag.

approximately $2.5 million worth of inventory. *Id.* ¶ 28. With respect to accounts receivable, the records indicated that Pace had $461,254 in receivables and that Flash had $614,228 in receivables, for a total of approximately $1 million. *Id.* ¶ 27. Overall, Pace and Flash combined had approximately $2.6 million in inventory and $1 million in accounts receivable. *Id.* ¶ 28.

Summa swiftly obtained a court order that essentially barred Pace from doing any further business until Summa was repaid. *Id.* ¶¶ 29-30. Even though these assets were worth far more than the outstanding debt to Summa, Mr. Bagbag was forced to file for bankruptcy and to put Pace into bankruptcy because the court order Summa obtained barred Pace from continuing its business. *Id.* ¶ 31.

### B. The bankruptcy petition inaccurately represented Pace's assets.

Mr. Bagbag, who was born and raised in Israel, speaks limited English and has no formal college or university education. *Id.* ¶¶ 17-19. Mr. Bagbag and Pace hired a young, relatively inexperienced lawyer, Mr. Daniel M. Katzner, to handle the bankruptcy petitions for himself and Pace. *Id.* ¶ 32. Unfortunately, the bankruptcy filings Mr. Katzner prepared for Pace did not accurately represent the value of Pace's inventory or its accounts receivable. *Id.* ¶¶ 33-34, 36-37. The bankruptcy petition substantially undervalued Pace's assets, listing the value of its inventory as $1 million, when in fact Pace's inventory was worth approximately $2.6 million. *Id.* ¶¶ 33-34. Similarly, the bankruptcy schedules Mr. Katzner prepared listed Pace's inventory as worth $1.6 million rather than $2.6 million and its accounts receivable as worth $315,000 rather than $1 million. *Id.* ¶¶ 28, 36-37.

Mr. Bagbag did not sign the petition for bankruptcy (which was signed by his counsel) or the schedule of assets (which was signed "/s/ Boaz Bagbag"), and he was unaware of these inaccuracies. *Id.* ¶¶ 33, 38-39. Nor would Mr. Bagbag have signed or authorized the filing of

- 4 -

a schedule reporting barely $2 million in assets when he knew Pace's assets were worth almost double that amount.   *Id.* ¶ 40.

### C.   Summa took possession of Pace's assets.

On July 31, 2008, the bankruptcy trustee entered into a stipulation with Summa allowing Summa to take possession of all of Pace's inventory and to collect on Pace's accounts receivable. *Id.* ¶ 41.   Summa obtained keys to Pace's premises, and Mr. Bagbag personally observed that Summa spent the next three days taking possession of inventory that belonged to Pace.   *Id.* ¶ 42. Summa sold much of Pace's inventory during the following months.   *Id.* ¶ 43.

Finally, in mid-October, 2008, a public auction of Pace's remaining inventory and physical assets was supposedly held.   *Id.* ¶ 44.   Mr. Bagbag and Pace were not notified of this auction.   *Id.* ¶ 45.   The auctioneer reported having sold all of Pace's remaining assets to MEP Auto, Inc. ("MEP Auto") for $525,000, with net proceeds from the auction amounting to only $411,848.   *Id.* ¶¶ 47, 50.   Dubiously, MEP Auto was the only bidder at the auction.   *Id.* ¶ 46. Mr. Bagbag's recent investigation has revealed that in fact MEP Auto paid $750,000 or $1.1 million for Pace's remaining inventory, far more than the $525,000 reported by Summa. Bagbag ¶ 20.[2]

Thus, it appears that the auctioneer, the buyer, and Summa managed to hold a single-bidder "auction" at which MEP Auto paid $525,000 (which it reported to the bankruptcy court) *and* Summa separately accepted additional monies from MEP Auto (which it didn't report). Pet. ¶ 55.

---

[2]  With respect to the more than $1 million in accounts receivable, as of January 29, 2009, Summa claimed that it had only collected $65,969.   Pet. ¶ 47.

Mr. Bagbag was entirely unaware of the low figures reported by Summa or any assertion

that Pace's assets were inadequate to compensate Summa for the $1.5 million it was owed.    *Id.*

¶ 57.   To the contrary, given that Pace had millions of dollars' worth of inventory and accounts

receivable, Mr. Bagbag was confident that Summa had been more than made whole.    *Id.*

Indeed, Mr. Bagbag understood that Summa had *profited* from his bankruptcy, taking far more

than it was due.    *Id.*

### D.    <u>No accountings were performed.</u>

Further, the July 31, 2008 stipulation required Summa to "provide the Trustee with (a) a

written accounting of its sale and/or other disposition of the Collateral [inventory and accounts

receivable] not later than sixty (60) days after the completion of such sale or other disposition and

(b) quarterly reports of all of Summa's collection of the Debtor's accounts and accounts

receivable."   *Id.* ¶ 58.   No such accountings were ever provided or filed.   *Id.* ¶ 58.

### E.    <u>Mr. Bagbag's lawyer "stipulated" to a judgment without authority.</u>

On June 4, 2010 – almost two years after Summa took possession of Pace, and more than

a year and a half after the supposed auction – counsel for Summa and Mr. Katzner

(Mr. Bagbag's lawyer) entered into a stipulation (the "Stipulation") purporting to "resolve

Summa's claims."   *Id.* ¶ 62.   The Stipulation was signed by Mr. Katzner, and *not* by Mr.

Bagbag.   *Id.* ¶ 67.   Mr. Katzner and counsel for Summa stipulated that "[t]he Debtor hereby

agrees to except from discharge and dischargeability Claim No. 13, filed on June 17, 2009" and

agreed to the entry "of a judgment in favor of Summa in the amount of $1,212,062.40".   *Id.*

¶¶ 63-64.

Mr. Bagbag never authorized Mr. Katzner to enter into such a stipulation, and would

never have agreed to entry of a judgment against him and in favor of Summa for $1.2 million.

*Id.* ¶¶ 69, 78.   Indeed, Mr. Bagbag knew that Summa should have been fully repaid through the

sale of Pace's inventory and the collection of the accounts receivable, which were more than
sufficient to satisfy any debt owed to Summa.    *Id.* ¶¶ 69, 78.

Mr. Bagbag never engaged in any conduct that suggested Mr. Katzner had authority to
bind him to the Stipulation.    Mr. Bagbag did not participate in any discussions with Summa
concerning any proposed settlement or appear at any court proceedings where such a settlement
was discussed.    *Id.* ¶ 70.

And because Mr. Bagbag was unaware of the Stipulation or its terms, he did not and
could not raise any objection at the time.    *Id.* ¶ 67.    On June 8, 2010, the bankruptcy court
entered a brief order based on the Stipulation, granting judgment in favor of Summa against
Mr. Bagbag.    *Id.* ¶ 68.    The Stipulation was docketed on June 9, 2010 and the judgment was
docketed on June 10, 2010.    *Id.* ¶ 71.    The certificate of service indicates that the Judgment was
sent to an address at which Mr. Bagbag no longer resided.    *Id.* ¶ 72.

**F.    <u>Summa suddenly re-appeared in 2018.</u>**

The order of final decree was entered in October 2011 in the Pace (business) bankruptcy
case and the order of discharge was entered in Mr. Bagbag's personal bankruptcy in February
2012.    *Id.* ¶ 73.    Mr. Bagbag justifiably understood that the nightmare of bankruptcy had
concluded and that he could resume his life, with the fresh start offered by the bankruptcy code.
*Id.* ¶ 74.    However, in the summer of 2018 – seven years after the bankruptcy ended and a full
decade after Summa seized and sold Pace assets that were more than sufficient to repay the
amount Summa was owed – Mr. Bagbag was contacted by an attorney claiming that Summa
was attempting to collect on some kind of debt.    *Id.* ¶ 75.

This was the first time Mr. Bagbag heard of any alleged debt owed to Summa post-
bankruptcy.    *Id.* ¶ 76.    Mr. Bagbag retained counsel to look into the matter and was shocked to
learn that his original bankruptcy counsel had stipulated to the entry of a judgment in favor of

Summa.   *Id.* ¶ 77.   He never knew of or heard of the 2010 stipulation and Judgment until then.

*Id.*   As noted above, Mr. Bagbag never authorized an agreement to enter a judgment against

him and in favor of Summa for $1.2 million (or any other amount).   *Id.* ¶ 78.   Indeed, he would

not have done so, as he knew that Summa had been fully repaid through the sale of Pace's

inventory and the collection of its accounts receivable.   *Id.*

Mr. Bagbag's efforts to obtain an explanation for Summa's actions have been unavailing.

*Id.* ¶¶ 79-82.   Summa has refused Mr. Bagbag's requests for records substantiating its claim that

Mr. Bagbag owes it any further money.   *Id.* ¶ 80.   The bankruptcy trustee, to whom Summa

was required to provide a written accounting, has advised that its records concerning this matter

are "in storage."   *Id.* ¶ 81.   And Mr. Katzner has no recollection of the Stipulation or

Judgment, or the circumstances surrounding their entry.   *Id.* ¶ 82.   Mr. Bagbag's own

investigations have uncovered evidence that Summa sold Pace's assets to MEP Auto for far more

than the $525,000 reported to the bankruptcy court, and no less than $750,000.   *Id.* ¶¶ 53, 55.

## **ARGUMENT**

This Court has broad discretion to issue temporary restraints in appropriate cases.   *See*

*Nobu Next Door, LLC v. Fine Arts Hous., Inc.*, 4 N.Y.3d 839, 840 (2005); CPLR § 6301.   "The

purpose of a preliminary injunction is to maintain the status quo while an action is pending."

*Zheng v. City of New York*, 92 A.D.3d 412, 413 (1st Dep't 2012).   A "party seeking a preliminary

injunction must demonstrate a probability of success on the merits, danger of irreparable injury

in the absence of an injunction and a balance of equities in its favor."   *Nobu Next Door,* 4 N.Y.3d

at 840.   A strong showing on one factor may excuse a lesser showing on another.   *See Danae Art*

*Int'l Inc. v. Stallone*, 163 A.D.2d 81, 82 (1st Dep't 1990) ("Here plaintiffs have made a strong case

on the first two requirements. … While the existence of the third requirement, of irreparable

harm if the injunction is not granted, is arguable, … , we deem it appropriate to maintain the status quo pending a resolution of the issues presented."). A court may also issue a temporary restraining order "pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had." CPLR § 6301.

Petitioner easily meets the standard for both a preliminary injunction and a temporary restraining order. Mr. Bagbag is highly likely to succeed in showing that Summa cannot collect twice on the same debt, an injunction would put a stop to Summa's inappropriate threats and harassment of Mr. Bagbag in furtherance of its illegitimate judgment, and Summa will suffer no harm whatsoever by waiting a short amount of additional time given that it has already sat on its alleged rights under the judgment for nearly a decade. *See Gramercy Co. v. Benenson*, 223 A.D.2d 497, 498 (1st Dep't 1996) ("[T]he balance of the equities tilts in favor of plaintiffs, who merely seek to maintain the status quo.") Mr. Bagbag will also be irreparably harmed by Summa's continued harassment and improper enforcement efforts if a temporary restraining order is not issued. Summa has threatened to take immediate actions to "change [Mr. Bagbag's] lifestyle" if he does not meet Summa's baseless demands for double payment. These wrongs, and any corresponding harms to Mr. Bagbag or his business interests, cannot be undone by a ruling in Mr. Bagbag's favor later in the case.

The Court should also order an immediate accounting and discovery concerning Summa's collection and disposition of Pace's assets, so that this matter can be resolved expeditiously.

## I. **Petitioner is likely to succeed on the merits.**

CPLR § 5239 provides that, "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, *any interested person* may commence a special proceeding

against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt" (emphasis added).   The Court of Appeals has held that "A judgment debtor is certainly an 'interested person' and CPLR 5239 permits such a party to bring a proceeding against any 'other person with whom a dispute exists to determine rights in the property.'"   *Cruz v. T.D. Bank*, N.A., 22 N.Y.3d 61, 75 (2013); *see also id.* n.3 ("Nothing in the statute suggests that CPLR 5239 was intended to be restricted to priority disputes between competing judgment creditors, although such controversies are often resolved in that forum.")

Thus, by its plain terms, CPLR § 5239 authorizes a judgment debtor such as Mr. Bagbag to commence a special proceeding against his judgment creditor Summa, in order to expeditiously resolve a dispute over whether Summa has rights in any property or debt of Mr. Bagbag under the Judgment.   *See also Am. Pride Constr. Inc. v. Russ Freeman Excavating Inc.*, 182 A.D.2d 940, 941 (3d Dep't 1992) (judgment debtor commenced CPLR § 5239 proceeding to determine rights to property in response to judgment creditor's efforts to collect on a default judgment).

Mr. Bagbag has therefore petitioned this Court pursuant to CPLR § 5239 for an order and/or judgment: (1) declaring that Mr. Katzner had no authority to enter into the Stipulation on behalf of Mr. Bagbag; (2) enjoining Summa from making any further attempts to collect on or enforce its purported rights under the Judgment; (3) ordering an accounting of the sales of Pace's inventory and the collections on Pace's receivables; and (4) authorizing discovery concerning the true value of Pace's inventory and accounts receivable and Summa's collection and disposal of Pace's assets.   Mr. Bagbag's petition is likely to succeed for the reasons set forth below.

**A.   Mr. Katzner had no authority to enter into the stipulation on behalf of Mr. Bagbag.**

Pursuant to CPLR § 3001, the "supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed."   New York courts have repeatedly recognized that a declaratory judgment is an appropriate mechanism to resolve competing property rights.   *See Soressi v. SWF, L.P.*, 81 A.D.3d 1143, 1143-44 (3d Dep't 2011) ("Petitioners then commenced this special proceeding pursuant to CPLR 5239 against respondents, seeking a declaration that the property is not subject to the judgment lien."); *Andersen v. Roberts*, No. 1412-17, 2018 WL 6055990, at *1 (Sup. Ct., N.Y. Cty., May 10, 2018) (denying motion to dismiss a "hybrid proceeding under CPLR 3001 and 5239"); *see also Cruz*, 22 N.Y.3d at 76 n.3 ("Parties seeking to collect a debt can, of course, bring a declaratory judgment action to resolve priority issues.").

By seeking to enforce the Judgment, Summa implicitly asserts that Mr. Katzner had authority to bind Mr. Bagbag to the Stipulation and grant Summa rights to property belonging to Mr. Bagbag.   Mr. Bagbag hotly disputes both assertions, maintaining that Mr. Katzner acted without authority and that Summa has no further rights to Mr. Bagbag's property because Summa has already collected all that it was owed (and more).   For the reasons set forth below, the Court should render a declaratory judgment that Mr. Katzner had no actual or apparent authority to enter into the Stipulation on behalf of Mr. Bagbag.

　　　　　　*i.　　Mr. Katzner did not have actual authority to enter into the stipulation on behalf of Mr. Bagbag.*

Mr. Katzner did not have actual authority to enter into the Stipulation on behalf of Mr. Bagbag.   Counsel does not have blanket authority to act on behalf of a client.   It is black-letter law that "without a grant of authority from the client, an attorney cannot compromise or settle a

claim, and settlements negotiated by attorneys without authority from their clients have not been binding." *Hallock v State of New York*, 64 N.Y.2d 224, 230 (1984) (citations omitted).

As detailed above, Mr. Bagbag never authorized the stipulation settling Summa's bankruptcy claims by agreeing to entry of a $1.2 million judgment against him, nor would he ever have authorized such a settlement given his understanding that Summa's $1.5 million claim had been more than repaid by the assets it seized from Pace.  *See* Pet. ¶¶ 69, 78.

Because Mr. Katzner lacked authority to enter into the Stipulation, the settlement with Summa and the resulting Judgment are not binding on Mr. Bagbag.

> ii.    *Mr. Katzner did not have apparent authority to enter into the stipulation.*

Mr. Katzner also did not have apparent authority to enter into the Stipulation on behalf of Mr. Bagbag.   "[T]he existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct *on the part of the principal—not the agent*."   *Hallock*, 64 N.Y.2d at 231 (citations omitted, emphasis added); *see also In re Kollel Mateh Efraim, LLC*, 334 B.R. 554 (Bankr. S.D.N.Y. 2005) ("A client does not create apparent authority for his attorney to settle a case merely by retaining the attorney.") (citations omitted).   Further, "a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable.  *Hallock*, 64 N.Y.2d at 231 *(citations omitted)*.

Mr. Bagbag never engaged in any conduct that suggested Mr. Katzner had authority to bind him to the Stipulation.   Mr. Bagbag did not participate in any discussions with Summa concerning any proposed settlement, or appear at any court proceedings where such a settlement was discussed.   *Id.* ¶ 70.   Mr. Bagbag disavowed the Stipulation as soon as he became aware of it.

Nor could Summa have reasonably believed that Mr. Bagbag would authorize a settlement that granted Summa a $1.2 million judgment when all amounts owed to Summa were more than covered by the assets it had already collected. *See id.* ¶¶ 69, 78.

**B.   <u>Summa has already collected any amounts it was owed by Mr. Bagbag.</u>**

Mr. Bagbag has uncovered evidence that Summa secretly collected substantial additional payments from the buyer of Pace's inventory.   Bagbag ¶¶ 19-20.   Although Summa reported to the bankruptcy court that the inventory was sold for $525,000, two sources with personal knowledge of the price paid by MEP Auto to purchase Pace's inventory have stated that it paid either $750,000 or $1.1 million.   *Id.* ¶ 20.[3]   In addition, Mr. Bagbag has found letters to Summa from the New York State Department of Taxation and Finance demanding payment of applicable sales tax.   These letters confirm that Summa received additional payments from the buyer of Pace's inventory, which Summa fraudulently did not report to the bankruptcy trustee or the bankruptcy court.   Based on this evidence and other evidence to be adduced, Mr. Bagbag is likely to show that Summa has already been paid for the debt it now seeks to collect.   Additional discovery is needed to determine how much Summa was already paid, and whether there is any basis for it to collect further amounts from Mr. Bagbag.   *See* Point III, *infra.*

---

[3] Further, because Summa's supposed auction was not commercially reasonable, the NY UCC imposes a rebuttable presumption that Summa cannot recover for any deficiency.   *See* NY UCC §§ 9-610(b) ("every aspect of a disposition of collateral … must be commercially reasonable"), 9-611 (debtor must be notified before disposition of collateral), 9-626 (secured party must show that its disposal of collateral was conducted in accordance with UCC requirements, or the debtor's liability for a deficiency is limited).   Here, there was no notice to the debtor, no accounting to the debtor or the Bankruptcy Trustee, and an unreasonably low reported sale price for the assets (a mere 16% recovery on the value of Pace's inventory).

### C.     A permanent injunction is necessary and appropriate.

Mr. Bagbag is also likely to succeed on his request that the Court permanently enjoin Summa from attempting to execute on the Judgment.   To obtain a permanent injunction, a plaintiff must show "[1] a violation of a right presently occurring, or threatened and imminent; [2] that the plaintiff has no adequate remedy at law; [3] that serious and irreparable injury will result if the injunction is not granted; and [4] that the equities are balanced in the plaintiff's favor." *Elow v. Svenningsen*, 58 A.D.3d 674, 675 (2d Dep't 2009) (citing 67A N.Y. Jur. 2d, Injunctions § 153).

All of these elements are satisfied here.   First, Summa's ongoing effort to force Mr. Bagbag to pay debts that have already been fully repaid violates Mr. Bagbag's due process and property rights.   Second and third, Summa's collection efforts are improperly harassing and threaten to disrupt Mr. Bagbag's current business and cause serious damage to his business interests and reputation that cannot be fully remediated by a damages award.   *See* Bagbag ¶¶ 21-22.   Finally, the balance of equities with respect to a permanent injunction tips significantly in Mr. Bagbag's favor.   He cannot be faulted for the results of Mr. Katzner's unauthorized actions, of which he had no knowledge.   Nor is he responsible for any flaws in the auction process conducted by Summa.   Summa, on the other hand, is (or should be) well aware that it collected far more than it was owed by Pace, that the Stipulation was based on at-best inaccurate information about the amounts it was paid, that the Stipulation was not signed by Mr. Bagbag, and that Summa's auction process was improper and commercially unreasonable.

In addition, CPLR § 5240 authorizes a court to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."   This section "grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent unreasonable annoyance, expense, embarrassment,

disadvantage, or other prejudice to any person or the courts." *Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 519-520 (1979); *see also Davis-Delaney-Arrow, Inc. v. Gerson-Ogden, Inc.*, 427 N.Y.S.2d 559 (Sup. Ct., N.Y. Cty. 1980) (issuing order restraining "[plaintiff], its attorneys and the sheriff, now or in the future, from selling [defendant's] causes of action."); *Viacom Outdoor Grp., Inc. v. McClair*, 62 A.D.3d 864, 864-65 (2d Dep't 2009) (observing that supreme court had granted judgment debtor's motion for an order "stay[ing] enforcement of the Arizona judgment").

Mr. Bagbag is likely to succeed in arguing that the Court should exercise its power under CPLR § 5240 to deny and limit Summa's use of enforcement procedures to unreasonably pursue Mr. Bagbag for amounts that Summa has already collected. New York courts have not hesitated to block similar attempts by judgment creditors to improperly discount the value of property seized to repay a debt, in order to unfairly collect additional amounts. *Wandschneider v. Bekeny*, 75 Misc. 2d 32, 35 (Sup. Ct., Westchester Cty. 1973) ("A remedy should exist and I find that both CPLR § 5240 and my general powers in equity are sufficient to halt the abuse inherent in the present scheme of enforcement of money judgments on real property…. [The] judgment-debtors are entitled to a credit against the judgment for the difference between the sale price and the fair and reasonable market value of the premises."); *Yellow Creek Hunting Club, Inc. v. Todd Supply, Inc.*, 145 A.D.2d 679 (3d Dep't 1988) (affirming decision that considered fair-market value of acreage which judgment lienholder had executed against, as opposed to below-market sale price, to determine whether that acreage satisfied the judgment in full, so as to preclude lienholder pursuant to CPLR § 5240 from executing against other acreage which had been sold by judgment debtor).

## II.    **The Court should order an accounting.**

New York courts permit an action for an equitable accounting based on, *inter alia*, "the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that

relationship respecting property in which the party seeking the accounting has an interest."
*Palazzo v. Palazzo*, 121 A.D.2d 261, 265 (2d Dep't 1986).   When Summa took possession of all of
Pace's inventory and accounts receivable, it became obligated to reveal its dealings with respect
to those assets.   *Stevens v. St. Joseph's Hosp.*, 52 A.D.2d 722, 722-23 (4th Dep't 1976) ("The
fiduciary relationship necessary to obtain an accounting is created by the plaintiff entrusting to
the defendant some money or property with respect to which the defendant is bound to reveal his
dealings.").   Indeed, the July 31, 2008 stipulation that allowed Summa to seize Pace's assets
expressly required Summa to "provide the [bankruptcy] Trustee with (a) a written accounting of
its sale and/or other disposition of the Collateral [*i.e.* the inventory and accounts receivable] not
later than sixty (60) days after the completion of such sale or other disposition and (b) quarterly
reports of all of Summa's collection of the Debtor's accounts and accounts receivable."   Summa
never provided this information, and the court should order it to do so now.

**III.   The Court should order discovery concerning Pace's inventory and accounts
receivable and the amounts summa collected from Pace.**

CPLR § 408 authorizes courts to order discovery in a special proceeding.   New York
courts frequently allow discovery relevant to key issues in dispute.   *See, e.g., Winston Capital, LLC
v. Abadiam*, 70 A.D.3d 414 (1st Dep't 2010) ("Given the existence of genuine factual disputes that
could not be resolved on the papers, Supreme Court, rather than dismissing the proceeding,
should have ordered disclosure and a trial.") (*citations omitted); Slotnick v. Chem. Bank*, 247 A.D.2d
294, 294 (1st Dep't 1998) (reversing and remanding for trial "with the State afforded discovery
with respect to [certain key] transactions and ownership of accrued interest in the accounts.").

Here, the parties clearly dispute whether Summa has already collected the amounts it
seeks to have Mr. Bagbag pay under the Judgment.   Discovery concerning the assets that
Summa has already seized and the value of those assets will shed light on this key issue.

- 16 -

Mr. Bagbag has already uncovered some relevant documents and information (including letters from the New York State Department of Taxation and Finance demanding payment of applicable sales tax, and statements by persons with knowledge) demonstrating that Summa received payments from the buyer of Pace's inventory which Summa fraudulently did not report to the bankruptcy trustee or the bankruptcy court. Further discovery is needed to determine how much Summa actually collected. The discovery Mr. Bagbag requests is narrow in scope and will not cause undue delay. Thus, the Court should order Summa and relevant third parties, if necessary, to respond expeditiously to reasonable discovery requests on this topic.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court issue a preliminary injunction and temporary restraining order preserving the status quo and preventing Summa from further harassing Mr. Bagbag pending the Court's decision on Mr. Bagbag's petition for an order and judgment pursuant to CPLR §§ 408, 3001, 5239, and 5240: (1) declaring that Mr. Katzner had no authority to enter into the Stipulation on behalf of Mr. Bagbag; and (2) enjoining Summa from making any further attempts to collect on or enforce its purported rights under the Judgment. Mr. Bagbag also requests that the Court issue an order requiring Summa to provide an accounting of the sales of Pace's inventory and the collections on Pace's receivables; authorizing discovery concerning the true value of Pace's inventory and accounts receivable and Summa's collection and disposal of Pace's assets; and granting such other and further relief as may be just and proper.

Dated: New York, NY
        January 30, 2019

POLLOCK COHEN LLP


By:  _/s/ Adam Pollock_

- 17 -

Adam Pollock
60 Broad St., 24th Fl.
New York, NY   10004
(212) 337-5361
Adam@PollockCohen.com
*Attorneys for Petitioner*